**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**SOUTHEAST DIVISION**

| | | |
|---|---|---|
| **JACK RATLIFF, individually and on behalf** | ) | |
| **of others similarly situted,** | ) | |
| | ) | **Civil Action No.** |
| *Plaintiff,* | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **CITY OF KENNETT, Nick Weatherwax, Roger,** | ) | |
| **Wheeler, Kay Collins, Kent Freeman, and Kenny** | ) | |
| **Wilson, individually and in their official capacities** | ) | |
| **as members of the Kennett, Missouri City Council** | ) | |
| **and its Public Safety Committee acting as Building** | ) | |
| **Commissioner, Bob Hancock as former mayor and** | ) | |
| **ex-officio member of the Public Safety Committee** | ) | |
| **Victor Mode, individually and as City Code** | ) | |
| **Enforcement Officer, and Tri-State Excavation,** | ) | |
| **L.L.C.,** | ) | |
| | ) | |
| *Defendants.* | ) | |

**COMPLAINT**

1.

INTRODUCTION

This action is brought pursuant to 42 U.S.C. §1983 and pendent state law

claims for declaratory and injunctive relief, compensatory and punitive damages,

prejudgment interest, and attorney fees under 42 U.S.C. §1988.  It arises from the

action of the  Defendants in causing the demolition of a residence owned by the

Plaintiff.  Plaintiff contends that the demolition by the Defendants and their agents was taken in the complete absence of all jurisdiction where the individual members of the Public Safety Committee were City Council members assigned by ordinance to perform the executive functions of  the Building Commissioner (hereinafter referred to as the Committee) such that any order for demolition was void and ineffective to authorize the demolition of any buildings or structures. (Missouri Constitution, Article 2, §1).

Plaintiff asserts the City of Kennett, Defendants Hancock, Weatherwax, Wheeler, Collins, Freeman and Wilson, and Defendant Mode (hereinafter referred to as municipal Defendants to distinguish them from Defendant Tri-State Excavation L.L.C.) failed to accord him his right to due process under the Fourteenth Amendment to the Constitution of the United States in that throughout the entire process he never received personal or constructive notice to repair or demolish his property from Defendant Mode or any other official or employee of the City. He was not informed of the decision by the Committee to demolish his property nor was he sent a copy of an final order of demolition. Plaintiff further contends that it was the standard practice of the Defendant Mode to issue notices of code violations and orders to repair or demolish buildings (also referred to herein as "declaration of nuisance") without stating specific facts and conditions that make a building or structure a

dangerous building the specific facts he relied upon to support his  decision to order demolition or repair. Furthermore, his order did not identify or designate what repairs were require to conform the municipal code.  On information and belief, his orders and notices, including any notice directed to Plaintiff were systematically constitutionally inadequate to  meet the fundamental requirements of due process of law under the federal and state constitutions  and the City's own ordinances where the reasons given tracked the language of the ordinance and were vague, non-specific, and merely conclusory. Mode's notices are constitutionally insufficient in that they simply state that the building has been determine by the City to be "unsafe" and "dangerous" and provide a citation to the governing ordinances. A subsequent notice used informs the property owner of the date for a hearing and that the hearing has been scheduled for him to show cause why the building should not be ordered demolished.  Again however the notice is constitutionally insufficient in that it again fails to state the specific or particular facts and conditions which make a building dangerous or explain why it is detrimental to public health, safety and welfare. No provision is made by statute that notice be served on the property as is the case with Mode's orders.  In the absence of proof of proper notice designed to reach the property owner, the Committee lacks the legitimacy and competence to conduct pre-deprivations hearings or grant any relief.

-3-

<u>JURISDICTION</u>

2.

The jurisdiction is invoked pursuant to 28 U.S.C. §1331, §1343 (3) and (4), and 28 U.S.C. §1367.

<u>PARTIES</u>

3.

Plaintiff Jack Ratliff is a property owner and resident of the City of Kennett, Dunklin County, Missouri. He owns his home and other rental property in the City.

4.

Defendant City of Kennett, Missouri, is a Third-Class city located in Dunklin County, Missouri.  It has established and operates Department of Public Safety which is responsible for code enforcement and property maintenance within the City.  The City may be served by serving the mayor of the City of Kennett at 200 Cedar St., Kennett, Missouri.

5.

At all times material to this action, Bob Hancock was the Mayor of the City of Kennett and an ex-officio member of the Public Safety Committee made up of members of the City Council appointed by the mayor to act as the City's Building

Commissioner. He had a duty under §77.350 R.S.Mo. to enforce compliance with the laws and ordinances for government of the city and to address any neglect or violation by city officials of their duties.

6.

Defendants Weatherwax, Wheeler, Collins, Freeman and Wheeler were at all times material to this action were appointed as members of the Public Safety Committee of the Kennett City Council, and under the ordinances of the City, collectively designated as the Building Commissioner responsible for code enforcement and property maintenance and authorizing the demolition of building. Defendant Weatherwax was the chairman of the Committee and responsible for conducting hearings involving demolition of dangerous buildings.

7.

Defendant Victor Mode the Code Enforcement/Property Maintenance officer responsible for making inspections of properties, sending notices to property owners stating their properties constituted nuisances or were dangerous structures and ordering them to repair or demolish their properties.  On information and belief, Plaintiff states that Mode issued a nuisance declaration and order requiring Plaintiff to demolish his house. Mode was also responsible for specifying the repairs to be made and stating the particular facts which make a building dangerous and

detrimental to the health, safety and welfare of the residents of the City.

8.

Defendant Tri-State Excavation, L.L.C. is a private corporation which contracts with the Defendant Mode on behalf of the City of Kennett to demolish buildings found by the Committee to be dangerous structures. Once his bid for the workwas accepted he demolished would demolish a building or structure. He was an agent of and joint participant with the City and acted at the direction of the Mode carrying out the demolition.

<u>CLASS MEMBERSHIP</u>

9.

Plaintiff has also brought his action pursuant to Rule 23 (b)(1-2) F.R.Civ.P. for declaratory and injunctive relief. The members of his class consists of the following:

(A.) All property owners whose houses, buildings, or other structures were demolished by the order of the Public Safety Committee acting as the City's Building Commissioner and had a special tax bill or assessment filed against their property for the costs of demolition and resulting clean-up.

(B.) All property owners whose property has been demolished by the City in violation of the requirements of due process without giving them adequate notice prior to a hearing stating the particular facts and conditions and describing how they

-6-

make the property dangerous and detrimental to public health, safety, and who have had special tax bills or assessments filed with the city collector as liens against their properties.

10.

The class is so numerous that joinder of all members as parties is impractical; the claims of Plaintiff are typical of the class, and as representative of the class, he will fairly and adequately protect the interests of the class as a whole; and the

FACTS

11.

In 2016 Jack Ratliff was the owner of a house and lot located at 209 Maple St., in the City of Kennett, Missouri.  He also owned a home and other rental property in the City.  The house at 209 Maple St. had been used for rental but was unoccupied at the time.  The house was secured at all times and he maintained the yard on a regular basis.

12.

The house was structurally sound and posed no threat to public health, safety or welfare of the residents of the neighborhood or of the City.

13.

At all times material to this action Jack Ratliff lived at 217 South Jackson St.,

-7-

in Kennett, Missouri.

14.

Ratliff was a career employee of the U.S. Army Corps of Engineers, Memphis District and served as a Lead Civil Engineer and Administrative Contracting Officer covering the area from Cape Girardeau, Missouri and Southern Illinois, Western Kentucky and Tennessee, and to Northern Mississippi. His duties included management of construction in the field, including supervision of construction inspectors. His duties required him to travel frequently within the District for days at a time before returning home. In 2007 he was in charge of demolition of homes and buildings in the 9th Ward of New Orleans, Louisiana following Hurricane Katrina for two months. In 2012 and again during 2014-2015, he was assigned to Afghanistan to manage and supervise construction projects on behalf of the Army.

15.

On information and belief, Victor Mode was the Kennett code enforcement and inspector who identified Ratliff's house as a dangerous building and therefore a nuisance. Plaintiff is unaware of how Mode attention was directed to he house or by whom.

16.

On information and belief, it was the practice of Mode to routinely issue notices

to property owners simply informing them that their properties had been condemned as dangerous structures under the Kennett City Code and ordering them to repair or demolish their houses within 30 days of receipt of the notice.  No additional facts are included in his order oor notice.

17.

The notice did not contain a statement of the any facts upon which Mode based his order nor did it specify what repairs were to be made.

18.

Mode was required to provide notice to the affected property owners. He was authorized to provide notice to a property owner by personal service or by certified mail with a return receipt requested addressed to them at their last known addresses. Section 67.410 R.S.Mo. provided that if service cannot be made by either of these modes, service could be made by notice published in the newspaper.

19.

At no time did Mode attempt to serve Ratliff personally with any notice.  Ratliff was not served by certified mail and signed no return receipt.  If any attempt was made to serve Plaintiff by certified mail, it failed and would have been returned unsigned by the U.S. Postal Service as undelivered.

20.

When personal service and service by certified mail failed, due process required Mode to take additional steps to serve a property owner with adequate notice.

21.

Mode was aware prior to the hearing scheduled for April 26, 2016 that notice of his order had not been served on Ratliff.

22.

Mode knew that Ratliff was an engineer with the U.S. Army Corps of Engineered located in Caruthersville, Missouri, 25 miles east of Kennett.

23.

On information and belief, Mode made no attempt for personal service on Ratliff.

24.

No attempt was made by Mode to constructively serve Ratliff by publication in the local newspaper.

25.

Defendant Mode would have known before the hearing that any attempted service by certified mail was defective and that publication of notice to Ratliff had not been attempted.  On information and belief, he failed to disclose the fact to the Committee.

26.

On information and belief, Mode reported to the Committee that Ratliff had failed to comply with his order within 30 of receipt of notice.  However there is no evidence that the notice was ever served on Ratliff.

27.

After it received Mode's report, the Committee set the proceeding for hearing on April 26, 2016.

28.

On information and belief, Mode prepared the Notice of Hearing on behalf of the Committee and was responsible for serving it on Ratliff informing him that the Committee had scheduled a hearing on his  order to repair or demolish his house.

29.

The hearing was scheduled for April 26, 2016. When the Ratliff's hearing  was called, Ratliff was not present. Without inquiring whether Ratliff had been properly served with notice, the Committee passed a motion to demolish his house at 209 Maple St.

30.

On information and belief, the Committee never took testimony from any witnesses, received copies of Mode's declaration of nuisance, or made specific

findings of fact based upon competent and substantial evidence, which showed the house to be a nuisance and detrimental to the health safety or welfare of the residents of the City of Kennett.  *Cf.* Woodson v. City of Kansas City, 80 S.W. 3d 6 (Mo. App. 2002) and §67.410 (4).

## 31.

On information and belief, the Committee never considered any alternative to demolition, such as making any needed repairs to the house.

## 32.

On information and belief, the Committee never issued any written order or made any specific findings of fact based upon competent and substantial supporting its decision.

## 33.

Ratliff was never provided a copy of the Committee's April 26, 2016 decision to demolish his house.  Had had he been timely provided a copy he could have retained an attorney and  challenged the  action under §536.100-.140 R.S.Mo. Or sought judicial review in the circuit court.

## 34.

On June 9, 2016, Defendant Mode posted a building permit sign on the property a 209 Maple St.  The sign had been altered to by adding the word "Demolition" with

a black marker at the top.

35.

On June 11, 2021, Ratliff came to 209 Maple St. To mow the yard and discovered the sign.  He did not know what the meant attempted to reach Terry McVey Kennett's City Attorney. He repeated calls to McVey daily the following week and left messages with his secretaries, but was unable to reach him or get him to return his call. On Monday June 20 Ratliff took off work and went to McVey's office to speak him about the demolition sign in his yard. He asked what the sign mean and McVey told him the City had decided to have the house torn down.  Ratliff stated that he had was unaware of any proceedings to demolish his house and that he had not received any letter or notice from the Cit.  McVey  told him the City could not have his house demolished without first giving his proper notice and a hearing.  McVey suggested that he contact Victor Mode, the code enforcement inspector, to discuss the matter further.  Thereafter, Ratliff repeatedly called Mode at his office in City hall to speak with him but could never reach him.  Each time he left a voice-mail message regarding the reason for his call, but Mode never returned any of the call.

36.

On information and belief, Mode had entered into a contract on behalf of the City with Tri-State Excavation, L.L.C. to demolish Plaintiff's house and that Tri-State

demolished the house and removed debris sometime during the week of June 20-24, 2016.

37.

On Saturday, June 25, 2016, Ratliff went to 209 Maple St. To mow the yard and discovered had his house had been demolished and the debris removed.  As of that time he had not received any notices or letters from the City that his house was subject to demolition or that he was entitled to a hearing before the decision was made.

38.

On August 9, 2016, Defendant Mode certified to the city clerk the cost for demolition for 209 Maple St. to be $3,950.00. On the same day, she issued a special tax bill for the costs demolition plus a $150.00 administrative fee, making the total tax bill $4,100.00.  She filed the special tax bill with the city collector as a lien to be collected with other taxes against the property.  The city clerk mailed Ratliff a  letter dated August 10, 2016 and attached copies the special tax bill.  He received the letter on August 13, 2016.

39.

On information and belief, the City of Kennett, Defendant Mode, and the individual members of the Public Safety Committee systematically followed the same practices regarding the contents and service of notices and orders as alleged above in

all other cases. All property owners whose houses, buildings, or structures were been

condemn and demolished have had the costs of demolition assessed as liens against

their properties.

## COUNT I.

(Civil Rights 42 U.S.C. §1983)

40.

Plaintiff adopts and realleges the allegations contained in the Paragraphs 1-36

above.

41.

This cause of action is brought pursuant to 42 U.S. C. §1983 and §1988 for

declaratory judgment, injunctive relief, compensatory and punitive damages,

prejudgment interest, and attorney fees and expenses for the actions of Defendants

heretofore set out in depriving Plaintiff of his rights secured by the Fourth, Fifth and

Fourteenth Amendments to the Constitution of the United States.

42.

At all times material to this action, the Defendants acted under color of law,

office, ordinance, custom, or usage of the State of Missouri, and the ordinances of the

City Kennett, Missouri; Defendant Tri-State Excavation, L.L.C. acted jointly and in

concert with Defendant City of Kennett and municipal officers and its employees in

causing the deprivations of Plaintiff's federally protected rights and demolition of his property.

43.

At all times material to this action Defendants Mode, the Code Enforcement Officer for the City of Kennett.  Hancock was at all times material to this action the Mayor and ex-officio member the Public Safety Committee of the Kennett City Council acting as Building Commissioner. He appointed or reappointed the members of the Committee. He had a duty under §77.350 to enforce the laws and ordinances for the governance of the city, supervise the subordinate officers and address any neglect of duty or violation of the law.

44.

Defendant Hancock had personal knowledge of the actions of the members of the Committee and  breached his duties by failing to intervene to prevent the members of the committee from unlawfully depriving Ratliff of his constitutional right to due process of law, illegally usurping the powers of the executive branch of city government and wrongfully demolishing Ratliff's house and failing to followed the prescribed statutes designed for his his protection.

Defendants Weatherwax, Wheeler, Collins, Freeman and Wilson were members of the City Council and as such were designate by the Kennett City Code as the City's

-16-

Building Commissioner.  All actions taken by them in their capacity as Building

Commissioner, including ordering the demolition of houses and buildings, were

unauthorized by law and wholly outside their jurisdiction under the state constitution.

All actions, including the destruction of Plaintiff's house, were void and without

effect.

45.

Article 2, Section 1 of the Missouri Constitution states:

> The powers of government shall be divided into three
> distinct departments – the legislative, executive and judicial
> – each of which shall be confined to a separate magistracy,
> and no person, or collection of persons, charged with the
> exercise of powers properly belonging to one of those
> departments shall exercise any power properly belonging to
> either of the others, except in the instances in this
> constitution expressly directed or permitted.

46.

The City Council member appointed the Public Safety Committee were charged

by statute with the exercise of legislative powers for enacting ordinances.  Once they

enacted ordinances or resolutions their powers were exhausted and the exercise of the

powers for enforcing the ordinance was confined to the executive branch.  The duties

of the office of Building Commissioner were executive in character and could not be

exercised by Council members on the Public Safety Committee.  To the extent that

they attempted to do so their actions constituted a usurpation of executive power and

-17-

were void as a matter of law. Their order to demolish Plaintiff's house was illegal

constituted a wrongful demolition. See: *State Auditor v. Joint Committee on*

*Legislative Research*,

956 S.W. 2d 228 (Mo. 1997).

47.

In addition, the order of demolition and the resulting destruction of

Plaintiff house deprived him of his due process right to a full and adequate pre-

deprivation hearing under the Fourteenth Amendment where he was not given proper

and sufficient notice required to meet the constitutional demands of due process under

the federal constitution or the procedures set out in §67.410 R.S.Mo. and the City

Code, §535.040-535.080.   Defendant Mode failed to serve Plaintiff with his the

declaration of nuisance and order to repair or demolish the house.

48.

No personal service the notice was attempted by Mode, and to the extent that

a notice was attempted by certified mail with return receipt requested, it failed because

it was not received by Plaintiff.  On information and belief the letter containing the

notice was returned to Defendant Mode by the U.S. Postal Service as undelivered.

Despite the fact that he did not receive a signed return receipt, he took no additional

steps to serve Planiff of the proceeding. No notice was attempted by publication or by

any other constitutionally sufficient means.

49.

The declaration of nuisance and order were so indefinite, vague, and non-specific and lacking as to any factual basis for the action as to fail to pass muster under the federal due process clause and was void as a matter of law. *McKinney as Next Friend of K.P. v. Huntsville School District, 350 F. Supp. 350 F. Supp. 3d. 757, 769, (W.D. Ark. 2018).*

50.

Mode's declaration and order was insufficient to withstand a due process challenge where makes only conclusory allegation, fails to specify any specific repairs to be made, and fails to include any facts to support the reasons for his acts that would support a finding the a building or structure was dangerous, should be condemned, constituted a nuisance, was subject to demolition, or posed a threat to the public health, safety, and welfare.

51.

An essential function of the notice for purposes of due process is to apprise the recipient of the nature of the proposed action and the facts that caused Mode to determine the structure was subject to demolition and enable the property owner to prepare a defense and effectively address them in a pre-deprivation hearing. Notice

-19-

without reference of the underlying facts is no notice at all.  See:  *Gonzales v. U.S.,*

*348 U.S. 407, 413-414, fn. 5*, "The right to a hearing embraces not only the right to

present evidence, but also a reasonable opportunity to know the claims of the opposing

party and to meet them. The right to submit arguments implies that opportunity;

otherwise the right would be a barren one").

52.

Fundamental to the concept fair pre-deprivation hearing  is the requirement that

it be conducted by a fair and impartial  hearing officer or decision-maker with the

actual authority to decide the matter or grant relief.  In this case, the Public Safety

Committee lacked the authority to conduct a hearing or make any decision.

53.

Committee members were fundamentally disqualified by the Missouri

Constitution acting in the executive capacity as Building Commissioner, conducting

hearings, and ordering the demolition of any building or structure or granting any

other relief.  Consequently, the hearing was neither fair or meaningful where the

Committee was prohibited as a matter of law from taking any action in the matter

before it.

54.

The joint actions of Defendants violated Plaintiff's clearly established rights

under both state law and the Fourth, Fifth and Fourteenth Amendments to the Constitution of the United States by depriving him of property, the benefits it provided, and future income derived therefrom.

55.

The actions of Defendants were intentional, outrageous, and showed a deliberate indifference to Plaintiff's rights thereby making an award of punitive damages against them appropriate.

56.

The City and its officials, in their individual and official capacities, have forfeited any claim of qualified immunity to monetary damages, where their actions violated clearly established law at the time in that they acted completely without jurisdiction denying Plaintiff his rights to due process of law and causing the demolition of his house. Their actions were void because the were taken in the complete absence of all jurisdiction. *State Auditor v. Joint Committee on Legislative Research*, 956 S.W. 2d 228 (Mo. 1997); Also see: *McNeill v. Kansas City,* 459 S.W. 3d 509 (Mo. App. 2015) (City officials liable for wrongful demolition where they failed to make written findings of fact in the order for demolition setting forth specific conditions or defects complained of and extent to which the were detrimental to life, health, property, safety, or welfare).

57.

As a direct and proximate result of the breach of the duties by Defendants, Plaintiff has been deprived of his right to due process of law guaranteed by the Fourteenth Amendment to the Constitution of the United States, the value and anticipated future earning it would reasonably generate and has been taxed with the cost of the unlawful demolition.

58.

As a direct and proximate result of the joint actions of Defendants, Plaintiff has suffered financial loss and damages, including but not limited to the destruction of his property, the lost of value of his property, the lost future rental income, loss of increased valuation from improvements, the inability to sell the lot, the imposition of a lien against the property the cost of demolition, the cost of attorney fees attorney and expenses of litigation, and loss of pre-judgment interest.

59.

Since all actions of the Building Commissioner were void, Mode's submission of the costs of demolition for assessment of a special tax bill, were likewise void and unenforceable against Plaintiff and the members of his class.

## COUNT II.

(Missouri Constitutional and Statutory Violations)

60.

Plaintiff realleges and incorporates herein the allegations contained in Paragraphs 1-59 above.

61.

The actions and inactions of the City, mayor, and members of the Committee causing the demolition of Ratliff's house were illegal and void under Article II, Section 1 of the Missouri Constitution.

62.

Section 67.450 R.S.Mo. waives a city's right of sovereign immunity for the when any building is (1) wrongfully demolished or is (2) demolished without adhering to the procedures provided in §§67.400-67.450 and make the city liable for damages the property owner.

63.

In *McNeill v. Kansas City, supra.* and *Woodson v. City of Kansas City,* 80 S.W. 3d 6 (Mo. App. 2002), the courts found the demolition orders by the city's code enforcement division were void and entered in the absence of all jurisdiction where the city failed to comply with the statutory requirements by including in its demolition order adequate written findings of the specific conditions or defects that made the buildings dangerous based on §67.410 and the municipal ordinances and codes. Also

See: §536.090 R.S.Mo.

64.

The Commission in his case ordered the demolition of Plaintiff's house without issuing any written order making findings of act and conclusions of law and immediately serving notice of the order on Plaintiff. Two months passed between the the passage of the motion to demolish on April 26, 2017 and the time the property was demolished, and no order was prepared or served on Plaintiff informing his of the action.  Had it done so, Plaintiff could have sought review within 30 days after receipt of itbefore the Administrative Hearings Commission §536.100-140;  *cf.* §536.090 (requires the city to  give "immediate notice in writing of its decision by delivering such notice to each party and furnish a copy of the decision, order, and findings of fact and conclusions of law).

65.

The Kennett City Code §535.060 requires the code enforcement to notify the owners of any building thereon which he finds to be a dangerous structure within the standards for a dangerous building and to issue notice of such defect in writing. Subsection 5 states that the notice provided to the owner shall include "a *statement of particulars* [Emphasis Supplied] that make the building or structure a dangerous building." Section 535.080.2 pertains to the hearing of the Building Commissioner.

It provides for a hearing to determine why a building reported to be dangerous should not be repaired, vacated or demolished "in accordance with the statement of particulars set forth in the Code Enforcement/Property Maintenance Officer's notice as provided therein." Like the cases holding he Building Commissioner's orders require a finding of facts, the provisions in the Code pertaining to the notice of the code enforcement office make clear that the factual basis for his determination must  be included in his notice  to satisfy the statute, city code, and the due process clauses of the state and federal constitution. See: Article I, Section 10 , Missouri Constitution.

66.

The City through its officers and agents have failed to comply with the procedures for providing adequate notice to Plaintiff in this case both as to content and legally sufficient service of the notice. The hearing itself was not "adequate" or "meaningful" meaningful since it was conducted without compliance with the constitutional and statutory requirements for giving notice.  Perhaps even more significant is the fact that the City Council members who acted as the Building Commissioner were disqualified by bu the state constitution from exercising powers reserved to the executive branch of city government and enforcing the municipal codes and had no jurisdiction for conducting a hearing or ordering the repair or demolition of any structure.  The notice and hearing were further defective and ineffective and

resulted in the wrongful demolition of Plaintiff's house and the assessment of $4,100 in an illegal and void special tax lien against the property.

67.

As a direct and proximate result of the actions caused by Defendants, Plaintiff has been deprived of the right to due process of law to which he was entitled under state law and the Missouri Constitution, and as a result his house wrongfully demolished and without following the statutory procedures found at §67.400 -67.450. Plaintiff suffered loss of the value of the house, future improvements,  and the anticipated future earning the house would reasonably generate in the future.  He has also suffered financial damage as a result of the assessment of the special tax bill for the the cost of the unlawful demolition.

68.

As a direct and proximate result of the joint actions of Defendants, Plaintiff has suffered financial loss and damages, including but not limited to the destruction of his property, the lost of value of his property, the lost future rental income, loss of increased valuation from improvements, the inability to sell the lot, the imposition of a lien against the property the cost of demolition, the cost of attorney fees attorney and expenses of litigation, and loss of pre-judgment interest.

<u>PRAYER  FOR  RELIEF</u>

WHEREFORE, Plaintiff and the members of his class pray this court grant the following relief:

1.

Under Count I  enter an order  pursuant to Rule 23(b) (1-2) F.R.Civ. P that this action be maintained as a class action for the purpose of securing declaratory and injunctive relief.

2.

Under Count I enter judgment in favor of Plaintiff and against all Defendants jointly and severally in their individual and official capacities pursuant to 42 U.S.C.§1983 for the deprivation of his constitutional right to due process of law under the Fourteenth Amendment and for the unlawful demolition of his property in the amount of $500,000 as compensatory damages and $500,000 as punitive damages together with an prejudgment interest, and an award of reasonable attorney fees and litigation costs and expenses pursuant to 42 U.S.C. §1988.

3.

Under Count I and II to enter declaratory and injunctive relief against the City of Kennett declaring the special tax bill filed against Plaintiff's property to be unlawful and void: and to enter injunctive relief requiring the City of Kennett to cancel, void, set aside, and expunge the special tax lien and any interest or charges thereon, and to correct all filings with the Dunklin County Recorder, and city and county tax

collectors, or any other entities to show such liens to be null and void.

4.

Under Counts I and II to enter declaratory and injunctive relief against the City of Kennett as follows: declare the special tax bill assessed against the property belonging to members of Plaintiff's class to be unlawful and void; declare the liens therefor to have no force and effect; and to enter injunctive relief requiring the City of Kennett to cancel,  set aside, void and expunge the special tax bill and any liens created thereby and to correct all documents filed with the Dunklin County Recorder, and city and county tax collectors; to award counsel for Plaintiff a reasonable attorney fee for services on behalf of the members of Plaintiff's class.

5.

Under Count II enter judgment in favor of Plaintiff and against all Defendants jointly and severally for wrongful demolition of his house and violation of his statutory rights without adhering to the procedures provided in Section 67.400-67.450 R.S.Mo.in the amount of $500,000 as compensatory damages and $500,000  as punitive damages together with prejudgment interest, and an award of reasonable attorney fees pursuant to under  §536.087 R.S.Mo.

6.

Under Counts I and II, grant Plaintiff prejudgment interest on all claims and an

-28-

award of reasonable attorney fees and expenses of litigation pursuant to 42 U.S.C.

§1988 under Count I.                          7.

     Grant Plaintiff such other and further relief as is just and proper.


                                            s/ Jim R. Bruce
                                            Jim R. Bruce,#29,673
                                            P.O. Box 37
                                            Kennett, MO 63857
                                            Telephone: (573) 888-9696

                                            ATTORNEY FOR PLAINTIFF